## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**BONNIE HERNANDEZ,**

       *Plaintiff,*

**v.**                         **Case No.:  4:23cv319-MW/MAF**

**UNITED STATES OF AMERICA,**

       *Defendant.*

_____/

### ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

This Court has considered, without hearing, Defendant's motion to dismiss Plaintiff's second amended complaint. ECF No. 41. For the reasons stated below, Defendant's motion is **GRANTED in part** and **DENIED in part**. Counts III, IV, and V of the complaint are **dismissed** for lack of subject matter jurisdiction. Counts I and II may proceed.

I

In deciding Defendant's motion to dismiss, this Court accepts Plaintiff's factual allegations as true and construes them in the light most favorable to Plaintiff. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016); *see also Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Plaintiff was incarcerated at the Federal Correctional Institution, Tallahassee (FCI Tallahassee), operated by the

United States Bureau of Prisons (BOP), from around July 2015 until August 2022. ECF No. 37 at ¶¶ 1–2, 28, 30. During that time, she was repeatedly sexually harassed and assaulted by Officer Lenton Hatten, then a sports specialist and corrections officer at FCI Tallahassee. *Id.* at ¶ 1. Officer Hatten was later indicted for sexually abusing Plaintiff and pled guilty in May 2023. *Id.* at ¶ 5. As part of his plea agreement, Officer Hatten admitted that he had engaged in a sexual relationship with Plaintiff between October 2021 and August 2022. *Id.*

Plaintiff first encountered Officer Hatten around 2019 when he began working at FCI Tallahassee in recreation, where she was also assigned to work. *Id.* at ¶ 82. He began to seek out Plaintiff, bringing her gifts and contraband, and making "inappropriate sexual comments" to her. *Id.* at ¶ 84. He routinely retrieved her to perform private work detail so that they would be alone together. *Id.* at ¶ 86. Around mid-2020, he began to lock Plaintiff into a shed housing recreational tools—known as the "rec shack"—with him to that she could not escape, and began making more explicit sexual comments to her, including about his penis. *Id.* at ¶ 87. He also began "groping, touching, and kissing" her when they were alone. *Id.* at ¶ 88. Even though Plaintiff was assigned to the supervision of a different officer, Officer Hatten frequently called Plaintiff to recreation at 6:00 am to see him when his shift there began. *Id.* at ¶ 90. He would lock her into the rec shack and not allow other prisoners in until around 7:30 am. *Id.* at ¶ 93. Officer Hatten first raped Plaintiff around

October 2021 and continued to do so at least weekly until August 2022. *Id.* at ¶¶ 14, 92, 100. Officer Hatten frequently told Plaintiff that he was "protecting" her job and implied that it would be taken away if she tried to report him, and that he had the power to have her transferred to a facility farther away from her family or put in the special housing unit (SHU). *Id.* at ¶¶ 49, 63, 110. The frequency and violence of his sexual assaults escalated over time, with him sometimes choking her or throwing her against a wall. *Id.* at ¶ 118. He also made threatening remarks when raping her, such as "I will fuck you up." *Id.* After an incident in which he violently raped her, tearing her vagina and causing her to bleed, Plaintiff collected her blood and his semen on a pantyliner and used it to report him. *Id.* at ¶¶ 121–22. She was given a rape kit and then placed in the SHU for investigation, and subsequently transferred to FDC Miami. *Id.* at ¶¶ 121–22, 129.

Officer Hatten used similar methods to "stalk, assault, abuse, and terrorize" at least ten other victims incarcerated at FCI Tallahassee. *Id.* at ¶¶ 44, 77.

By 2020, BOP employees were aware that Officer Hatten was spending time alone with female prisoners and "engaging in inappropriate sexual and/or flirtatious interactions with them." *Id.* at ¶ 8. Officer Hatten developed a "widespread reputation among women prisoners for being a 'pervert' who said and did inappropriate things to them. This reputation was well known to other BOP personnel, including but not limited to unit managers, counselors, correctional

officers, lieutenants, department heads, captains, supervisors, and executive staff." *Id.* at ¶ 50.

Although "operating protocols" required two officers to be present when supervising inmates who work in recreation, his fellow officers failed to follow these protocols and regularly left Officer Hatten alone with prisoners there so that they could go upstairs and watch TV or use the computer. *Id.* at ¶ 9. He also frequently volunteered to supervise women in recreation and food services at times when other officers were not around. *Id.* at ¶ 45. BOP personnel who were tasked with monitoring the facility's security cameras knew that Officer Hatten often took female prisoners to "blind spots" beyond the reach of the cameras, in violation of existing protocols, and stayed there with them for "lengthy periods of time for no apparent reason," but the personnel took no action in response. *Id.* at ¶¶ 10, 97. One such blind spot was the rec shack, and another was the second floor of a recreational building, known as "upstairs rec." *Id.* at ¶ 47.

Officers Jones, Love, Mitchell, and Jackson often worked overlapping shifts with Officer Hatten at recreation, and frequently allowed Officer Hatten to take women to isolated locations alone. *Id.* at ¶¶ 52–55, 89. Officer Adamson was the recreation supervisor with authority over Officer Hatten and the others. *Id.* at ¶ 56. Some of these officers often sent prisoners, including Plaintiff, to see Officer Hatten by herself, even though she was not assigned to his work detail. *Id.* at ¶¶ 54–56, 94.

4

One of these officers, Officer Love, witnessed a prior incident where another officer at FCI Tallahassee sexually abused a woman and was eventually convicted. *Id.* at ¶ 53. Another, Officer Jackson, once told Plaintiff and another prisoner that "y'all need to go sit outside with y'all daddy," referring to Officer Hatten. *Id.* at ¶ 55. Officer Mitchell once commented on how long Plaintiff had been in Officer Hatten's office, and on other occasions asked her why Officer Hatten always needed her to "hold his hand" in doing his job. *Id.* at ¶ 113.

In October 2021, Plaintiff was sent to the SHU for three months and was fired from her job in recreation "for an investigation regarding suspected preferential treatment by recreation staff" and as discipline for having contraband items that she had been gifted by Officer Hatten, but BOP staff never inquired into who gave her the contraband. *Id.* at ¶¶ 98–104, 109, 111. While she was in the SHU, Officer Hatten took a "sudden interest" in it, taking on additional shifts or overtime there and leaving his assigned posts to go there. *Id.* at ¶ 101. After Plaintiff was fired from recreation—a firing she was told was "permanent"—Officer Adamson allowed Officer Hatten to assign her to work directly under him at recreation a few weeks later. *Id.* at ¶ 105. When she was placed in the SHU a second time for possession of contraband that Officer Hatten had given her, officers including Lieutenant Paramour observed Officer Hatten visiting her SHU cell without any legitimate purpose for being there, but the officers did not question either of them about it. *Id.*

at ¶ 112. Around July 2022, Officer Mitchell was informed by another prisoner that Officer Hatten frequently locked Plaintiff into the rec shack. *Id.* at ¶ 114. Officer Mitchell responded that Officer Hatten could not do that, said "he did not think it was okay for prisoners to be taken advantage of," and told Plaintiff that they would have a follow-up conversation about it, but he never spoke to her about it again. *Id.* at ¶¶ 114–115. Around this time, Plaintiff also told Officers Love and Jackson about Officer Hatten locking her in the rec shack, but they told her that they could not do anything without proof. *Id.* at ¶ 116.

Despite federal regulations and BOP policies requiring that BOP staff immediately report any knowledge, suspicion, or information regarding incidents of sexual abuse or harassment in a facility, none of these officers ever reported or investigated Officer Hatten until Plaintiff reported his abuse in August 2022. *Id.* at ¶¶ 57–58, 91.

FCI Tallahassee has received more than 130 complaints of staff-on-prisoner abuse since 2012, and two other officers at the facility were found guilty and sentenced for sexual abuse of prisoners there in 2021. *Id.* at ¶¶ 67, 69. The two other officers who were found to have sexually abused prisoners at FCI Tallahassee used methods similar to those used by Officer Hatten, including taking women to off-camera areas by themselves, and one also supervised women at recreation with Officer Hatten. *Id.* at ¶¶ 69–71.

6

Plaintiff timely filed an administrative claim with the BOP and did not receive a response within six months. *Id.* at ¶¶ 22–23. She subsequently brought this civil action.

## II

Plaintiff brings five claims against the United States under the Federal Tort Claims Act (FTCA) for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, sexual battery, sexual assault, seeking compensatory damages, fess, and costs.

Defendant moves to dismiss all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and separately for failure to comply with Fed. R. Civ. P. 8(d)(1) and 10(b) and for taking the form of a shotgun pleading.[1]

A motion under Rule 12(b)(1) asserting lack of subject matter jurisdiction may either be a "facial" or "factual" attack on a court's jurisdiction to hear the case. *Lawrence*, 919 F.2d at 1528–29. Where, as here, a defendant makes a facial attack, the court looks to the pleadings to determine if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Id.* at 1529. In evaluating this type of challenge, the court must consider the allegations of the complaint to be true. *Id.* If a court finds

---

[1] Defendant also argues that, in the alternative, Counts III, IV, and V should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Because this Court finds it lack subject matter jurisdiction over those counts, it need not address this alternative argument.

it lacks jurisdiction, it is without power to enter judgment and must dismiss the case. *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1023 (11th Cir. 2021).

In contrast, dismissal for the form of a pleading under Rule 12(b)(6) is only appropriate where it is "*virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015) (emphasis in original). Dismissal is warranted if the complaint fails to give the defendant adequate notice of the claims being brought against them and the supporting factual allegations for each claim. *Id.* at 1323.

### III

Sovereign immunity shields the United States and its agencies from unconsented suit. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). Unless the United States has waived its sovereign immunity, courts are without jurisdiction to hear any claim against it. *Id.* With the FTCA, Congress partially waived its sovereign immunity and provided federal district courts with subject matter jurisdiction to hear certain tort claims against the United States. *See* Pub. L. No. 79-601, §§ 401–424, 60 Stat. 842 (1946) (codified as amended at 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671–2680). Specifically, the FTCA grants federal district courts jurisdiction to hear claims against the United States for injuries caused by the "negligent or wrongful act[s] or omissions[s]" of its employees while acting within

the scope of their employment in circumstances where a private person would be liable to the claimant under the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1). This limited waiver is subject to several exceptions, which must be strictly construed in favor of the United States. *See Smith v. United States*, 14 F.4th 1228, 1231 (11th Cir. 2021).

Defendant draws on a few of these exceptions to argue that Plaintiff's claims are barred by sovereign immunity. First, Defendant argues that Plaintiff failed to exhaust administrative remedies. Second, Defendant argues that the FTCA's discretionary function exception bars Plaintiff's negligence claims. Third, Defendant argues that most of Plaintiff's negligence claims are barred because they allege duties for which there is no private person analog under Florida law. Finally, Defendant argues that Plaintiff's claims for intentional infliction of emotional distress, sexual battery, and sexual assault are barred because the conduct alleged was outside the course and scope of the alleged tortfeasor's employment. This Court will address each argument in turn, beginning with Plaintiff's exhaustion of administrative remedies.

A

The FTCA bars any claim that is not first presented to the relevant federal agency for review. 28 U.S.C. § 2675(a). A district court only has jurisdiction over an FTCA claim if the plaintiff has first satisfied 28 U.S.C. § 2675(a). *Burchfield v.*

*United States*, 168 U.S. 1252, 1254–55 (11th Cir. 1999). Congress included this notice requirement in the FTCA to "give federal agencies a fair opportunity to investigate and possibly settle claims," and to "facilitate early disposition of claims." *Id.* at 1255 (quoting *McNeil v. United States*, 508 U.S. 106, 111–12 (1993)) (internal quotation marks and alterations omitted). The provision "was not intended to put up a barrier of technicalities to defeat [plaintiffs'] claims." *Id.* (quoting *Lopez v. United States*, 758 F.2d 806, 809 (1st Cir. 1985).

Given this purpose, the notice requirement is satisfied if the claimant (1) gives the appropriate agency written notice of their claim sufficient to enable the agency to investigate and (2) places a value on the claim. *Adams v. United States*, 615 F.2d 284, 289 (5th Cir. 1980).[2] In this case, Plaintiff presented a notice to the BOP of claims for "negligence, assault, battery, false imprisonment, and intentional infliction of emotional distress" arising from the actions of Officer Hatten and the BOP's "hiring, retention, training, reporting, and supervision" of him, including its failure to "follow and enforce" several provisions of the Prison Rape Elimination Act (PREA) and its implementing regulations. ECF No. 41-1 at 2–3. Defendant does not dispute that this written notice was presented to the appropriate agency and placed a value on the claims but argues that it did not give BOP sufficient

---

[2] Decisions of the Court of Appeals for the Fifth Circuit that were announced prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

information to investigate her claims because it did not specifically allege negligence by Officers Jones, Love, Mitchell, Jackson, Adamson, and Paramour, who are named in her complaint. ECF No. 41 at 7.

Under the Eleventh Circuit's precedents, a claimant need not state every material fact underlying her potential claims, but merely provide enough information to allow the agency to "'begin its own investigation' of the alleged events and explore the possibility of settlement." *Burchfield*, 168 F.3d at 1255 (quoting *Adams*, 615 F.2d at 292). An agency is deemed to be on notice "not only of the theories of recovery stated in the claim, but of the theories of recovery that its reasonable investigation of the specific allegations of the claim should reveal." *Id.* In *Burchfield*, a Veterans Affairs patient filed an administrative claim alleging only that his doctors were negligent in prescribing a corticosteroid, causing him to develop osteoporosis, but the court found that it provided sufficient notice of his claim for negligence in failing to properly diagnose and treat his osteoporosis. *Id.* at 1254. The court emphasized that the amount of information required by § 2675(a) is "minimal," and a claimant need not provide the agency with a "preview of his or her lawsuit by reciting every possible theory of recovery . . . or every factual detail that might be relevant." *Id.* at 1255. The court's reasoning relied heavily on *Rise v. United States*, 630 F.2d 1068 (5th Cir. 1980), binding precedent from the former Fifth Circuit, in which a plaintiff's administrative claim that Army physicians failed to diagnose and

treat an aneurysm was deemed to provide sufficient notice of a claim for negligence in referring the patient to a civilian hospital and failing to supervise her treatment there. *Id.* at 1071.

Here, Plaintiff provided sufficient notice of her claims to satisfy § 2675(a). In a letter to the BOP, Plaintiff identified claims for negligence and other intentional torts based on the actions of Officer Hatten and FCI Tallahassee's actions in response. ECF No. 41-1. That the letter did not mention Officer Hatten's colleagues by name is not dispositive. It alleged that FCIT administrators were responsible for the negligent "hiring, retention, training, reporting, and supervision" of Officer Hatten, a "known sexual predator." *Id.* at 2. The letter described the timeline of Officer Hatten's abuse, including the month and year the rapes began, the date of his last assault on her, the location at FCI Tallahassee where they occurred (the rec shack), and the method he used to gain her trust and subsequently blackmail her. *Id.* at 3–4. It also identified eight federal regulations promulgated under PREA that FCI Tallahassee failed to enforce and follow, including a requirement that officers report suspected sexual abuse. *Id.* at 3. In her complaint, Plaintiff provides more detailed allegations that identify six named corrections officers at FCI Tallahassee who knew or should have known that she was being abused by Officer Hatten, but failed to report him or take any other action and repeatedly sent her to be alone with him. ECF No. 37 at ¶¶ 50, 52–61, 89–91, 94–95, 104–105, 112–116. A reasonable

investigation into a letter describing FCI Tallahassee's negligence in "reporting" Officer Hatten, citing a PREA regulation requiring that corrections officers report sexual abuse, and identifying Officer Hatten as a "known sexual predator" would have involved questioning his co-workers, including Officers Jones, Love, Mitchell, Jackson, and Adamson, who worked overlapping shifts at recreation with Officer Hatten, to determine whether they knew of or suspected Officer Hatten's sexual abuse and failed to report it. Because the government is deemed to be on notice of all "theories of recovery that its reasonable investigation of the specific allegations of the claim should reveal," Plaintiff's letter satisfied the requirements of § 2675(a) for the claims in her complaint.

Defendant relies on two cases to argue that any portion of Plaintiff's claims for relief that are based on the actions (or inactions) of Officer Hatten's coworkers are barred because they were not mentioned in her notice to the BOP. *See* ECF No. 41 at 9. But those cases meaningfully differ from this one. The first, *Orlando Helicopter Airways v. United States*, 75 F.3d 622 (11th Cir. 1996), held that a military contractor did not provide notice of a claim that it was maliciously prosecuted by the government when it filed a contract readjustment claim for the costs it incurred complying with the government's investigation of a false whistleblower report. Dispositive in that case was the fact that the contractor's notice of claim only included allegations of malfeasance on the part of the whistleblower, not the

government. *Id.* at 625–26. That is not analogous to this case, in which Plaintiff alleged malfeasance specifically by FCI Tallahassee. ECF No. 41-1 at 2–3. The second, *Bush v. United States*, 703 F.2d 491 (11th Cir. 1983), held that the plaintiff properly noticed a claim for negligence in performing unnecessary surgery and negligent post-operative care, but not for failure to obtain informed consent prior to the operation. The government argued that the plaintiff had failed to provide notice of both her claims for negligent post-operative care and for lack of informed consent. *Id.* at 493. The court concluded that the plaintiff's administrative claim, which listed the date of the injury as the date of surgery and the days following it, and which attached a medical report that referenced a post-operative complication that may have required reoperating sooner than the VA doctors did, provided sufficient notice of the claim for negligent post-operative care. *Id.* at 494. But because the administrative claim and attached documents did not contain any challenge to the signed consent form or any allegation that the doctors failed to disclose the risks involved in the procedures, it did not provide notice of a claim for lack of informed consent. *Id.* at 495. In contrast, Plaintiff's notice of claim here specifically alleged that FCI Tallahassee failed to enforce specific PREA regulations, including a requirement that BOP officials report suspected sexual abuse. ECF No. 41-1 at 2–3. That provides sufficient notice for the claims of negligence in her complaint, which are premised on the same PREA regulations, because a reasonable investigation into

14

whether those regulations were violated would have questioned Officer Hatten's colleagues to determine whether officials at FCI Tallahassee had reason to know that Officer Hatten was a "sexual predator" and whether those with knowledge violated PREA regulations by failing to report it.

B

Next, Defendant argues that Plaintiff's negligence claims are barred by 28 U.S.C. § 2680(a), which excludes from the FTCA's waiver of sovereign immunity any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." This provision is commonly called the "discretionary function exception." Its purpose is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323 (1991).

Whether a plaintiff's claim falls within the discretionary function exception— and is thus removed from this Court's subject matter jurisdiction—is assessed under a two-part test. First, a court must "examine the nature of the challenged conduct to determine whether it is 'discretionary in nature,' meaning that it involves 'an element of judgment or choice.'" *Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1157 (11th Cir. 2020). The conduct involves no legitimate element of judgment or choice

15

if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). Under those circumstances, the nature of the challenged conduct is not discretionary, and the exception does not apply. But if the conduct does involve a legitimate element of judgment or choice, a court then determines "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Foster Logging*, 973 F.3d at 1157.

Plaintiff's negligence claims challenge the conduct of FCI Tallahassee officials in their hiring, training, supervision, investigation, and retention of Officer Hatten and his colleagues, the conduct of Officer Hatten's colleagues in their failure to report his sexual abuse, and the failure of FCI officials and officers to take any action to protect her from Officer Hatten's repeated assaults. Defendant argues that all of this conduct is discretionary.

Defendant raises two primary arguments that Plaintiff's claims fail at the first step of the *Gaubert* test. First, that how the BOP and its officers go about satisfying their duty of protection of inmates involves the exercise of discretion. ECF No. 41 at 17. Second, that Plaintiff's claims based on officials' conduct in "hiring, supervision, and retention" are barred by the discretionary function exception because "employment-related decisions necessarily employ judgment," especially when those decisions involve BOP employees. ECF No. 41 at 18. While both are

16

true to an extent, Plaintiff's complaint points to specific federal regulations promulgated under PREA and official BOP policies, known as "program statements," that she argues remove the BOP's discretion in specific circumstances and that were allegedly violated. ECF No. 37 at ¶¶ 39–40, 57. Defendant responds that PREA regulations still "leave it to BOP's discretion as to their implementation and operation," citing three unpublished out-of-circuit district court cases (including one in which the Sixth Circuit reached a different conclusion on appeal). ECF No. 41 at 21.

Whether the PREA regulations and the related BOP program statements relied on by Plaintiff constitute mandatory directives sufficient to remove the covered conduct from the protection of the discretionary function exception has divided the district courts.[3] The Eleventh Circuit has not addressed the question. The Ninth

---

[3] *Compare, e.g.*, *B.B. v. United States*, 2024 WL 5090460, at *4 (E.D. Ky. Dec. 12, 2024) (applying circuit precedent that BOP Program Statement 5324.12, 34 U.S.C. § 30307(a)(1), and PREA's implementing regulations impose a non-discretionary requirement that BOP officials timely report and investigate information regarding sexual assault in BOP facilities); *Cardenas v. United States*, 2023 WL 7634436, at *7–9 (N.D. Tex. Nov. 15, 2023) (concluding that 28 C.F.R. §§ 115.61 and 115.76 and BOP Program Statements 3420.11 and 5324.12 impose non-discretionary requirements that BOP officials report suspected sexual abuse and that BOP take timely disciplinary action against BOP officials who violate its sexual misconduct policies); *Pinson v. United States*, 2022 WL 21797575, at *10 (D. Ariz. Sept. 30, 2022) (concluding that both 28 C.F.R. § 115.61 and BOP Program Statement 5324.12 impose a non-discretionary course of action for BOP officials who receive a report of sexual harassment or abuse); *Herrera v. United States*, 2022 WL 902090, at *10 (S.D.N.Y. Mar. 27, 2022) (concluding that BOP Program Statement 5324.12 and 28 C.F.R. § 115.61 are non-discretionary); *Shorter v. United States*, 2020 WL 4188455, at *9 (D.N.J. July 21, 2020) (indicating that BOP Program Statements 3420.11 and 5324 would be non-discretionary if employee failed to respond at all to a known emergency or failed to take any action in response to a "substantial risk of imminent sexual abuse"); *and James v. LaCroix*, 2017 WL 2602598, at *3–4 (W.D. La. Apr. 17, 2017), *report and*

Circuit, in an unpublished opinion, found that PREA and 28 C.F.R. 115.13(a) do not impose a mandatory duty on the BOP to monitor prisoners continuously, but did not address the other regulations and policies relied on by Plaintiff here. *See Gladney v. United States*, 858 F. App'x 221, 223 (9th Cir. 2021). The one circuit court that has squarely addressed the PREA regulations and program statements at issue here held that at least one—BOP Program Statement 5324.12, which incorporates 28 C.F.R. § 115.61 and requires that BOP officials timely report and investigate suspected sexual abuse—is non-discretionary. *L.C. v. United States*, 83 F.4th 534, 546 (6th Cir. 2023).[4] The district courts that have taken the more rigorous approach of examining

---

*recommendation adopted*, 2017 WL 2588570 (W.D. La. June 14, 2017) (concluding that 28 C.F.R. §§ 115.61, 115.62, 115.64, and 115.65 are non-discretionary); *with Peralta v. United States*, 2020 WL 13210654, at *3 (C.D. Cal. Oct. 23, 2020) (concluding that PREA regulations "do not affect the discretion afforded to the BOP when determining how to protect inmates and supervise their employees"); *Bray v. United States*, No. 5:22-cv-147, slip op. at 12–15 (N.D.W. Va. Jan. 25, 2023) (concluding that 28 C.F.R. §§ 115.11, 115.13, 115.15, 115.17, 115.43, 115.61, 115.67, and 115.76 are discretionary because "PREA and its implementing standards afford BOP officials broad discretion in combatting, monitoring, and investigating sexual abuse"); *Drake v. United States*, 2022 WL 21758571, at *7–9 (M.D. Pa. Apr. 11, 2022), *report and recommendation adopted*, 2022 WL 21758241 (M.D. Pa. July 6, 2022) (concluding, in the context of inmate-on-inmate violence, that BOP Program Statement 3420.11 is discretionary); *Peterson v. Martinez*, 2020 WL 999832, at *7–8 (N.D. Cal. Mar. 2, 2020) (concluding that PREA regulations and BOP program statements concerning protection of inmates, inmate housing assignments, and transfer decisions are not mandatory); *Dudley v. United States*, 2020 WL 532338, at *12 (N.D. Tex. Feb. 3, 2020) (adopting the United States's reply brief as its reasoning); *and Tilga v. United States*, 2014 WL 12783121, at *16 (D.N.M Dec. 5, 2014) (concluding that because PREA and its implementing regulations generally allow for significant discretion in preventing sexual abuse in BOP facilities, and plaintiffs made "at most, generalized allegations regarding violations of the PREA," their claims were barred by the discretionary function exception).

[4] The court went on to say that even if it were discretionary at step one of the *Gaubert* test, it would not be covered by the discretionary function exception because "[t]here are, of course, no legitimate reasons 'grounded in social, economic, and political policy' for failing timely to report and investigate the sexual assault of a person in BOP custody." *Id.* at 548.

whether specific regulations or program statements require a particular course of action—rather than whether the BOP retains general discretion in fulfilling its duty to protect inmates and implement PREA—have generally concluded that, at a minimum, BOP Program Statement 5324.12 and 28 C.F.R. § 115.61 mandate reporting and investigation of suspected sexual assault in BOP facilities and therefore remove claims based on the failure to do so from the discretionary function exception. *See, e.g.*, *Cardenas*, 2023 WL 7634436, at *7 ("[E]ven if PREA leaves room for agency discretion at a broad level, that discretion doesn't extend to areas where PREA mandates specific conduct."); *Pinson*, 2022 WL 21797575, at *10; *Shorter*, 2020 WL 4188455, at *9; *James*, 2017 WL 2602598, at *3–4. This Court is persuaded by the reasoning of those cases and the Sixth Circuit, which is in harmony with the Eleventh Circuit's approach to the discretionary function exception in other contexts. *See, e.g.*, *Douglas v. United States*, 814 F.3d 1268, 1277 (11th Cir. 2016) (rejecting an argument that because BOP regulations allowed for discretion with respect to work assignments and pay grades, officials had discretion to disregard regulations stating that inmate pay vests once the inmate's work is assigned a pay grade and evaluated by his supervisor).

Accordingly, this Court finds that claims for alleged violations of 28 C.F.R. §§ 115.61 (directing the BOP to require that all staff immediately report "any knowledge, suspicion, or information" regarding sexual abuse in a facility and

requiring the facility to report all allegations to designated investigators), 115.62 (requiring that the BOP take immediate action to protect an inmate when it learns of a substantial risk of imminent sexual abuse), and 115.76 (requiring disciplinary sanctions for staff members who violate sexual abuse policies), together with the implementing BOP Program Statements 3420.11 (prohibiting BOP staff from allowing another person to engage in sexual behavior with an inmate)[5] and 5324.12 (outlining mandatory procedures for reporting and investigating suspected sexual abuse) are not barred by the discretionary function exception because these federal regulations and policies specifically prescribe a course of action for BOP employees to follow. Although some of these policies allow BOP officials a degree of discretion in, for example, *how* to act to protect an inmate from a known, substantial risk of imminent sexual abuse or the *type* of disciplinary sanctions to impose on staff members who violate sexual misconduct policies, they remove the BOP's discretion to take *no* action. These provisions differ from others cited by Plaintiff that use discretionary language, such as requiring an agency to "make its best efforts" to meet a standard *See, e.g.*, 28 C.F.R. § 115.13.

Because the regulations and policies described above are non-discretionary, this Court need not proceed to the second step of the *Gaubert* test. However, even if

---

[5] BOP Program Statement 3420.12 was replaced with BOP Program Statement 3420.11 as of June 24, 2024. However, BOP Program Statement 3420.11 was in effect at the time of all events described in the complaint.

they were discretionary, the discretionary function exception would not apply to claims based on violations of these policies because there are no "legitimate reasons 'grounded in social, economic, and political policy' for failing to report, investigate, or respond to sexual abuse of an inmate by a BOP officer. *L.C.*, 83 F.4th at 548 (quoting *Gaubert*, 499 U.S. at 323); *cf. Phillips v. United States*, 956 F.2d 1071, 1075 (11th Cir. 1992) (failure to follow procedures outlined in safety manual not protected by discretionary function exception because even though "it is axiomatic that discretion must be used in allocating available resources" and therefore "[t]he need for expedition versus the need for safety arises several times a day for many federal employees," "this does not mean that a federal employee's every choice is a policy judgment shielded from liability through the operation of the discretionary function exception"); *Ochran v. United States*, 117 F.3d 495, 504 (11th Cir. 1997) (decision not to inform threatened witness of available remedies against intimidation and harassment, though discretionary, did not fall within discretionary function exception because there are no policy considerations that might influence the judgment of when to give the victim or witness the relevant information); *Swafford v. United States*, 839 F.3d 1365, 1372 (11th Cir. 2016) (failure to maintain stairs in safe condition not protected by discretionary function exception because once the agency exercised its discretion to build and maintain them, "failure to maintain them in a safe condition is simply not a permissible exercise of policy judgment").

21

Because the government operates with a limited budget, virtually every choice made by every federal employee could conceivably involve some tradeoffs. That reporting, investigating, or responding to sexual abuse of an inmate by an employee may impose some inconvenience or minor expense on the BOP or its staff does not mean a failure to do so is grounded in "social, economic, and political policy." Knowingly ignoring the sexual abuse of an inmate by a BOP officer is not a judgment "of the kind that the discretionary function exception was designed to shield."

C

Third, Defendant argues that this Court lacks subject matter jurisdiction over at least some portion of Plaintiff's negligence claims because Plaintiff alleges duties that are not recognized by Florida law. 28 U.S.C. § 1346(b)(1) provides the district courts with subject matter jurisdiction over claims against the United States for the negligence of its employees only to the extent that a private person would be liable under the law of the place where the act or omission occurred. Because the acts or omissions alleged by Plaintiff occurred at FCI Tallahassee, this Court only has jurisdiction over her claims if the acts or omissions she alleges violate some duty owed to her under Florida law. *See Meyer*, 510 U.S. at 477; *Wallace v. Dean*, 3 So. 3d 1035, 1046 (Fla. 2009). Defendant concedes that Florida law gives corrections officers a duty to use reasonable care to ensure the safety of inmates during their incarceration, as Plaintiff pleads in her complaint. ECF No. 41 at 24. But Defendant

argues that the more granular duties Plaintiff pleads in her complaint are not recognized by Florida law. *Id.* Specifically, Defendant argues that Florida law does not give corrections officers a duty to "ensure that correctional and/or administrative personnel with a history of sexual assaults were not allowed to harm or injure other incarcerated people," to "maintain, operate, and control" a prison as a "safe and secure place" for inmates, "to provide adequate custody, control, supervision, and monitoring" to inmates, to "ensure that any suspicion or indication of sexual abuse is reported through the chain of command for full investigation," or to "ensure that all BOP employees are trained, supervised and monitored properly." *Id.* at 24–28.

Defendant's argument is unavailing. The question of duty is not defined at the level of granularity that Defendant's argument presumes. As Defendant concedes, Florida law gives corrections officers a duty to use reasonable care to ensure the safety of inmates during their incarceration. ECF No. 41 at 24; *see, e.g.*, *Ferguson v. Perry*, 593 So. 2d 273, 277 (Fla. 5th DCA 1992). That duty could be breached in many ways, including by unreasonably failing to report suspected sexual abuse. The facts Plaintiff alleges as the basis for the government's negligence liability can all be fairly characterized as breaches of its employees' general duty to use reasonable care to ensure the safety of inmates in their custody. Therefore, Plaintiff has properly alleged that the United States would be liable under Florida law for the actions of its employees if a private person.

D

Fourth, Defendant argues that this Court lacks subject matter jurisdiction over Counts III, IV, and V because they are based on intentional torts committed by Officer Hatten outside the scope of his employment. ECF No. 41 at 28. While the FTCA grants subject matter jurisdiction over certain intentional torts committed by law enforcement officers, 28 U.S.C. § 2680(h), it cross-references 28 U.S.C. § 1346(b)(1), which limits the grant of jurisdiction to those torts committed by a federal employee "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).[6] Whether an employee's conduct was within the scope of his employment is governed by the law where the acts or omissions occurred; in this case, Florida. *Flohr v. Mackovjak*, 84 F.3d 386, 390 (11th Cir. 1996).

Under Florida law, an act is within the scope of employment if it (1) is the kind of act the employee is employed to perform; (2) was motivated by a purpose to serve the master; and (3) occurs substantially within the time and space of employment. *Iglesia Cristiana La Casa Del Señor, Inc. v. L.M.*, 783 So. 2d 353, 357 (Fla. 3d DCA 2001). The "purpose of the employee's act . . . is said to be the important consideration. *Hennagan v. Dep't of Highway Safety & Motor Vehicles*,

---

[6] Plaintiff argues that 2680(h) does not limit its grant of jurisdiction only to intentional torts committed within the scope of employment, but also allows suits for intentional torts committed under color of law. ECF No. 46 at 30. Although the language of § 2680(h) is arguably ambiguous on this point, the Supreme Court has determined that the cross-reference to § 1346(b) limits the grant of jurisdiction to intentional torts committed in the scope of employment. *Millbrook v. United States*, 569 U.S. 50, 55 (2013).

467 So. 2d 748 (Fla. 1st DCA 1985). Due to this purpose requirement, sexual assaults and batteries by employees are generally held to be outside the scope of employment. *Iglesia Cristiana*, 783 So. 2d at 357. Plaintiff acknowledges this but argues that the law recognizes an exception where the employee was assisted in accomplishing the tort by the employee-employer relationship. ECF No. 46 at 28. Although that language does appear in some Florida case law, it does not help Plaintiff here.

As an initial matter, this principle is derived from the law of agency, and the Eleventh Circuit has expressed doubt that the FTCA imports this agency-relation exception through the phrase "acting within the scope of his office or employment." *Hunter v. United States*, 825 F. App'x 699 (11th Cir. 2020). Furthermore, where Florida courts have cited this principle in the scope-of-employment context, they have still found the purpose of the employee's actions to be determinative, even in cases like this one where the alleged tortfeasor had access to and authority over the victim because of his or her employment. *See Mason v. Fla. Sheriff's Self-Ins. Fund*, 699 So. 2d 268 (Fla. 5th DCA 1997) (holding that, for the purposes of determining applicability of insurance policy, deputy sheriff who was on duty, in uniform, and charged with the responsibility of serving a warrant was not acting within the scope of employment when he coerced sex from a victim in exchange for not arresting her on a warrant); *Iglesia Cristiana*, 783 So. 2d at 358 ("While [the alleged tortfeasor] may have had access to [the plaintiff] because of his position as the Church pastor,

whom [the plaintiff] and her family had become friends with over time, he was not engaging in authorized acts or serving the interests of the Church during the time he tried to seduce her or on the day he raped her."); *Goss v. Human Servs Assocs.*, 79 So. 3d 127 (Fla. 5th DCA 2012) (holding that employee was not aided by agency relationship in having sexual relationship with minor even though job entailed rehabilitating troubled youths by building relationships with them, including with physical encouragement in the form of hugging and hand-holding, and victim was one of the children in her care); *City of Green Cove Springs v. Donaldson*, 348 F.2d 197 (Fla. 5th DCA 1965) (on-duty police officer was not acting within the scope of his employment when he raped a victim in his police car after requesting that she accompany him to the city jail so that her vehicle tag could be checked); *Nazareth v. Herndon Ambulance Serv.*, 467 So. 2d 1076, 1078 (Fla. 5th DCA 1985) (declining to apply the agency-relation exception to the case of an ambulance attendant sexually assaulting a passenger while she was being transported to the hospital).

Even *Hennagan*, in which a Florida court held that a law enforcement officer could have been acting in the scope of his employment when he sexually abused a minor in his patrol car after ordering her to enter his vehicle to be searched, rested its conclusion on a determination that it was "not impossible," at the motion-to-dismiss stage, to attribute the alleged actions of the officer, "at least in part, to

misfeasance and/or overzealousness in the performance of his official duties." 467 So. 2d at 751.

In short, Officer Hatten's actions in sexually assaulting Plaintiff can only be considered to have occurred within the scope of his employment under Florida law if they were motivated at least in part by a purpose to serve his employer. But Plaintiff essentially concedes that they were not. In her complaint, Plaintiff alleges that Officer Hatten acted "with the subjective intent to gratify his own desire and/or to humiliate" her. ECF No. 37 at ¶ 276. And in her opposition to Defendant's motion to dismiss, Plaintiff does not argue that Officer Hatten was motivated at least in part by a purpose to serve his employer, only that "while it is true that Officer Hatten committed a heinous crime for his sexual gratification, this does not excuse the Government from liability." ECF No. 46 at 31.

Because Florida law dictates that Officer Hatten was not acting within the scope of his employment when he sexually abused Plaintiff, Counts III, IV, and V must be dismissed for lack of subject matter jurisdiction.

IV

Defendant also argues that Plaintiff's claims should be dismissed because the complaint fails to comply with Fed. R. Civ. P. 8(d)(1) and 10(b) and because Counts I and II take the form of a shotgun pleading by comingling negligence theories.

Defendant's argument that Plaintiff's complaint fails to comply with Rules 8(d)(1) and 10(b) amounts to a protest that it is too long and detailed. Defendant notes that Rule 8(d)(1) directs that each allegation should be "simple, concise, and direct" and that Rule 10(b) directs a party to "state its claims or defenses in single paragraphs, each limited as far as practicable to a single set of circumstances." ECF No. 41 at 11. Ironically, Defendant proceeds to spend multiple pages complaining that the complaint includes "repetitive, argumentative, prolix, unnecessarily detailed, and at times wholly irrelevant allegations." *Id.* at 3, 12–13. Although Defendant claims that the complaint's level of detail and structure prevent it from "clearly discerning the facts purportedly giving rise to the specific claims for relief," this Court is not convinced. Despite the complaint's level of detail, this Court has no trouble discerning which alleged facts would give rise to the specific claims for relief Plaintiff requests. Defendant does not seem to have had too much trouble either, given that it was able to compose a lengthy motion to dismiss addressing every one of Plaintiff's claims. Dismissal for the form of a pleading is only appropriate where it is "*virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792 F.3d at 1325 (emphasis in original). That is not the case here. This Court will not dismiss a complaint because the United States's lawyers find it unpleasant or challenging to read detailed allegations of abuse in its correctional facilities, particularly given the relatively high degree of detail that is

generally required for such a complaint to survive a motion to dismiss for lack of subject matter jurisdiction or failure to state a claim.

Defendant's argument that the complaint should be dismissed as a shotgun pleading because Counts I and II comingle negligence theories is similarly unavailing. The key feature of shotgun pleadings is that they fail to give defendants "adequate notice" of the claims being bought against them and the supporting factual allegations for each claim. *Weiland*, 792 F.3d at 1323. But the complaint clearly outlines which duties were allegedly breached by which officers, identifies the alleged acts of each officer by name, and separates its allegations about duties owed and breached directly by the United States into a clearly labeled section of the relevant count. It is therefore quite possible to know to know which allegations of fact are intended to support which claim(s) for relief, so the complaint will not be dismissed as a shotgun pleading.

V

In sum, Plaintiff's claims for negligence, contained in Counts I and II of the complaint, may move forward to the extent that they are premised on alleged failures to comply with the mandatory directives contained in PREA's implementing regulations and the BOP's Program Statements. Counts II, IV, and V of the complaint are dismissed for lack of subject matter jurisdiction.

Accordingly,

29

**IT IS ORDERED:**

Defendant's motion is **GRANTED in part** and **DENIED in part**. Counts III, IV, and V of the complaint are **dismissed** for lack of subject matter jurisdiction. Counts I and II may proceed. Defendant shall file its answer to the remaining counts **on or before Thursday, January 23, 2025**.

**SO ORDERED on January 9, 2025.**

<u>**s/Mark E. Walker**</u>
**Chief United States District Judge**